[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for breach of contract seeking to recover certain monthly payments made by plaintiff to or on behalf of defendant tried before this court on December 10, 1996.
At trial, it was not disputed that on or about April 2, 1992, a conference was held between plaintiff corporation (Ambassador), represented by Angelo DiMarco and his son Stephen DiMarco, and defendant Edward D'Antonio at which an oral agreement was arrived at under which D'Antonio agreed to be employed by Ambassador as manager of the limousine service. In addition to salary arrangements Ambassador agreed to make the scheduled monthly payments in the amount of $1,661 on an American Savings Bank loan made to D'Antonio's mother sometime in 1990, the proceeds of which D'Antonio had earlier used for his capital investment in a partnership called Affordable Limousine, affiliated with Ambassador which had proven to be unsuccessful. The parties agreed that the monthly payments would be made by Ambassador while D'Antonio remained in its employ and refrained from entering or initiating any competitive limousine business. Most of the talking at the meeting was done by Angelo DiMarco. D'Antonio resigned from Ambassador on July 13, 1994 to go to work for Beverly Hills Limousine, a direct competitor of Ambassador, commencing July 18, 1994, at which time there was an unpaid balance due on the bank note of approximately $6,400. The parties stipulate that prior to that time, Ambassador expended $32,979.86, either in monthly payments of $1,661 to the bank or indirectly to D'Antonio.
— I — CT Page 538
At trial Ambassador attempted to prove that the oral agreement of April 2, 1992 embraced certain additional provisions, either express or implied; namely (1) that D'Antonio agreed to remain employed by Ambassador and not enter any competing business so long as Ambassador was making payments on the notes; (2) that if D'Antonio left joined a competing business while the note remained unpaid, he would repay all the payments on the note made by Ambassador prior to that time; and (3) that D'Antonio not only agreed not to enter any competing business while the note remained unpaid, but also not to "seek" employment from such business.
Defendant denies the existence of any of these additional provisions. As briefly summarized, the evidence fails to prove that there was a sufficiently clear meeting of the minds or agreement on any of them so as to constitute an enforceable contract.
(1)
A serious attempt to pin down D'Antonio to a specific term of employment tied in to the pay-off of the note would almost certainly have referred to the date of pay-off. No witness for Plaintiff was able to define the length of the employment agreement, name such a date of termination or even claim that such date was mentioned in the discussion between the parties. Nothing occurring after April 2, 1992 and prior to D'Antonio's resignation in any way confirmed a specific term of employment. In view of the conflicting testimony, such a term cannot be found to have been agreed upon.
(2)
Although plaintiff attempted at trial to prove a specific agreement to repay note payments made prior to D'Antonio's resignation, this claim does not appear in the complaint.
Angelo DiMarco in his deposition testimony said such repayment was "assumed on both parts." Stephen DiMarco said it was expressly agreed upon by D'Antonio. D'Antonio testified that the note payments were considered by him to CT Page 539 be additional compensation for his employment at Ambassador for which he was otherwise receiving a basic gross salary of $500 weekly, and that his repayment of the note payments was never even discussed.
It hardly seems likely that a promise by D'Antonio to repay all prior note payments made by Ambassador in payment of his mother's note in the event of his defection would not be reduced to writing.
(3)
Plaintiff claims that the oral agreement prohibited defendant from "seeking" employment with a competitor while the note payments were being made by Ambassador. He introduced evidence that defendant or his wife had been negotiating with Beverly Hills as early as January 21, 1994, and argued that this was "seeking" employment and violated the employment agreement.
Stephen DiMarco testified that even "seeking" employment with a competitor by D'Antonio was prohibited in the arrangement proposed by his father. Defendant denied that his "seeking" employment with a competitor was ever mentioned. A close perusal of the deposition of Angelo DiMarco, in evidence, discloses no reference in his various descriptions of the oral agreement prohibiting D'Antonio from "seeking" employment with a competitor. The closest reference to "seeking" is his testimony (page 35 Transcript) that he believed (D'Antonio) "was competing against us because he negotiated while he was under our employment" but then he went on to say he had no actual knowledge of such negotiating. In four other descriptions of the acts prohibited under the oral agreement he refers to D'Antonio leaving the employment of Ambassador; competing; and goinginto business with a competitor. (Transcript pp. 18, 24, 26, 46). On balance, plaintiff has failed to prove that the oral agreement made "seeking" employment by defendant with a competitor a per se violation of the employment agreement.
In this case, plaintiff had the burden of proving that there was a meeting of the minds as to these additional terms or that they were part of the oral agreement.Vigorito v. Allardi, 143 Conn. 70 (1955); see Dorr-OliverInc. v. Webster Computer Corp., 30 Conn. Sup. 544 (1972). CT Page 540 This plaintiff has failed to do.
— II —
In its complaint, plaintiff claims that the amount of payments it made on or toward the American Savings Bank note was a measure of damages it sustained because of defendant's breach of the oral employment agreement when he entered the employment of a competitor while the bank note remained unpaid. Since it has been found that defendant did not breach the oral agreement, or promise to pay back the payments made by plaintiff, it is unnecessary to consider the further question of damages.
Judgment is entered for the defendant.
Jerry Wagner Trial Judge Referee